UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILL NEAL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:15-cv-425 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| JOHN FORT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court are two motions. The first is a Motion for Summary Judgment (Docket No. 39) filed by the defendant, John Fort, to which the plaintiff has filed a Response (Docket No. 49), and Mr. Fort has filed a Reply (Docket No. 50). The second is a Motion for Summary Judgment (Docket No. 43) filed by an unnamed defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), to which the plaintiff has filed a Response (Docket No. 48), and State Farm has filed a Reply (Docket No. 52). For the following reasons, both motions for summary judgment will be denied.

## BACKGROUND & PROCEDURAL HISTORY

This case arises from a January 3, 2015 motor vehicle accident in which the plaintiff, Will Neal, Jr., was severely injured after he lost control of his vehicle and struck an earthen median on Interstate 65. According to Mr. Neal, he lost control of his van after it was struck from behind by another vehicle allegedly operated by the defendant, John Fort. (Docket No. 1 ¶¶ 3, 6–11.) On April 14, 2015, Mr. Neal filed the Complaint against Mr. Fort, bringing claims for negligence and negligence *per se*, premised on Mr. Fort's failure to "stop before the front of his vehicle came in contact with the back of [Mr. Neal's] vehicle." (*Id.* ¶¶ 8, 12–14.) On May 5,

1

2015, Mr. Fort filed an Answer, acknowledging that his vehicle had collided with Mr. Neal's van but denying that he had violated his duty to drive safely, carefully, and lawfully before the accident. (Docket No. 9 ¶¶ 7, 15.) Rather, Mr. Fort alleges that Mr. Neal's vehicle "suddenly and without warning" began "improperly traveling in generally a perpendicular fashion cutting across the northbound lanes of I[nterstate] 65 north" until it "came directly into the immediate path" of his vehicle. (*Id.* ¶ 11.) An unnamed party, State Farm, also filed an Answer on May 5, presumably as the plaintiff's uninsured motorist policy carrier. (Docket No. 10.) State Farm's Answer, which was filed by Mr. Fort's counsel, contained the same allegations and denials as those made by Mr. Fort, with an additional allegation that Mr. Fort was not "an uninsured motorist or an underinsured motorist." (*Id.* ¶ 27.)

In August of 2015, the parties reached an agreement to amend these pleadings. (Docket No. 17.) Pursuant to a Stipulation filed with the court, Mr. Fort amended his Answer to allege that, if Mr. Neal was rear-ended, it was not he but, rather, a John Doe motorist who acted negligently in causing the accident. (Docket No. 18 ¶ 27.) Mr. Neal filed an Amended Complaint incorporating Mr. Fort's allegations regarding the unknown motorist and "demand[ing] strict proof of these allegations" from him. (Docket 19 ¶ 14.1.) Pursuant to Tennessee law, Mr. Neal then served process on State Farm, his uninsured motorist carrier, which has the right to file pleadings and take other actions on behalf of the unknown motorist. (*Id.* ¶ 14.2 (citing Tenn. Code Ann. § 20-1-119)); *see* Tenn. Code Ann. § 56-7-1206 (providing procedures for personal injury suits against unknown motorists). In the Stipulation, the parties further anticipated that, in light of Mr. Fort's new defense, "additional counsel shall be required to represent" State Farm as Mr. Neal's uninsured motorist carrier. (Docket No. 17 ¶ 7.) On November 20, 2015, new counsel appeared on behalf of State Farm and filed an Answer to the

Amended Complaint. (Docket Nos. 22, 23.)

I.     **Mr. Fort's Motion for Summary Judgment**

On July 14, 2016, Mr. Fort filed a Motion for Summary Judgment (Docket No. 39), accompanied by a Memorandum of Law (Docket No. 40), a Statement of Material Facts (Docket No. 41), his own responses to Mr. Neal's interrogatories (Docket No. 38-2), and a transcript of the deposition of Mr. Neal (Docket No. 38-1).[1] In the Motion, Mr. Fort argues that Mr. Neal "lacks sufficient evidence to demonstrate elements essential to a case of negligence" and, therefore, cannot survive summary judgment on his claims. (Docket No. 39, p. 1.) Specifically, Mr. Fort argues that Mr. Neal cannot produce evidence sufficient to establish that (1) Mr. Fort breached any duty owed to Mr. Neal, or (2) any of Mr. Fort's conduct was "a cause in fact" of the accident. (Docket No. 40, pp. 1–2.) As support for these arguments, Mr. Fort cites Mr. Neal's deposition testimony, in which Mr. Neal testified that, although he distinctly recalls something coming into contact with the rear of his van shortly before he lost control of the vehicle, he did not see who or what it was. (*Id.* at p. 2 (citing Docket No. 38-1 (Dep. W. Neal), 57:8–21).) Mr. Fort argues that there exists no evidence of his alleged negligence other than the fact of the accident itself, and "negligence is never presumed from the mere fact of an accident or

---

[1] In support of the pending motions, both defendants submitted reports and affidavits prepared by experts in the field of accident reconstruction, David Huskey and Roman Kickirillo. (Docket Nos. 38-3, 44-1.) Shortly before the defendants filed the pending motions, however, Mr. Neal moved to exclude all testimony by Mr. Huskey and Mr. Kickirillo on the grounds that their opinions are neither reliable nor relevant and, therefore, are not admissible under Federal Rule of Evidence 702. (Docket No. 35, pp. 9–12 (Huskey); Docket No. 36, pp. 9–11 (Kickirillo).) After full briefing of the motions, the court found that the opinions were not supported by sufficiently reliable methodology and granted the motions to exclude them. (Docket Nos. 56–59.) Accordingly, the court will not consider anything submitted by Mr. Huskey or Mr. Kickirillo in ruling on the pending motions, including their affidavits, reports, and any other evidence contained therein.

3

injury." (*Id.* at p. 5 (citing *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992).)

On August 9, 2016, Mr. Neal filed a Response in Opposition to Mr. Fort's motion (Docket No. 49), accompanied by a Response to Mr. Fort's Statement of Material Facts (Docket No. 49-1). In his Response, Mr. Neal argues that a reasonable fact finder could apply the doctrine of *res ipsa loquitur*, which allows for an inference of negligence when "the events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent," to support a finding that Mr. Fort was, in fact, negligent. (Docket No. 49, pp. 5–6 (quoting *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)).) According to Mr. Neal, it is within the common knowledge of a potential juror that the type of injuries he sustained do not ordinarily occur absent negligence. (*Id.*) Moreover, "ample circumstantial evidence" in the record supports the inference that Mr. Fort negligently allowed his vehicle to strike Mr. Neal's van, causing Mr. Neal to lose control of the van and resulting in his injuries. (*Id.* at p. 6.)

On August 22, 2016, Mr. Fort filed a Reply, in which he argues that the doctrine of *res ipsa loquitur* is inapplicable to this case, because it does not apply (1) when "specific acts of negligence are alleged and evidence in support those theories [is] presented and accepted," or (2) if the plaintiff's injury could reasonably have occurred even without the defendant's alleged negligence. (Docket No. 50, p. 3 (citing *Brown v. Univ. Nursing Home, Inc.*, 496 S.W.2d 503, 509 (Tenn. Ct. App. 1972)).) Mr. Fort then reiterates his argument that, because Mr. Neal "has testified he has no knowledge of who or what caused his accident," he has insufficient proof of Mr. Fort's alleged negligence and cannot survive summary judgment. (*Id.* at pp. 4–5.)

Mr. Fort also filed an Objection to Mr. Neal's Response to his Statement of Material Facts, arguing that certain of Mr. Neal's responses assert "argumentative" additional contentions that are not supported by specific citations to the record, in violation of Local Rule 56.01(c).

4

(Docket No. 51.) It appears to the court that a portion of the challenged response is merely an attempt to correct Mr. Fort's characterization of Mr. Neal's deposition testimony, and the court does not find that Mr. Neal's failure to provide specific citations to support these arguments violates local rules. To the extent, however, that Mr. Neal has attempted to inject facts into his responses that are not adequately supported by citations to the record, the court will sustain Mr. Fort's objection and exclude those facts from its consideration of the pending motions.

## II.   State Farm's Motion for Summary Judgment

On July 15, 2016, State Farm filed a Motion for Summary Judgment (Docket No. 43), accompanied by a Memorandum of Law (Docket No. 44), a Statement of Undisputed Material Facts (Docket No. 45), and transcripts of the deposition testimony of Mr. Neal and two witnesses to the accident (Docket Nos. 46-2–46-4). In the Motion, State Farm argues that Mr. Neal cannot prevail on a negligence claim against any unknown motorist – which would implicate his uninsured motorist policy with State Farm – because he cannot meet the requirements of Tenn. Code Ann. § 56-7-1201(e). (Docket No. 43.) According to State Farm, Mr. Neal has failed to meet the requirements of this statutory provision because he has insufficient proof of any actual physical contact between Mr. Neal's van and another vehicle or of the existence of an unknown motorist. (Docket No. 44, pp. 6–7.)

On August 9, 2016, Mr. Neal filed a Response in Opposition to State Farm's Motion (Docket No. 48), accompanied by a Response to State Farm's Statement of Undisputed Material Facts (Docket No. 48-1) and a copy of Mr. Fort's responses to interrogatories (Docket No. 48-2). In his Response, Mr. Neal first notes that it is not he but, rather, Mr. Fort who should be opposing State Farm's motion. (Docket No. 48, pp. 1–2.) Citing *Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 220 (Tenn. 2010), Mr. Neal argues that, when a defendant adds a

5

negligent third party as a defense to a plaintiff's claims, it is not the plaintiff but, rather, the defendant who is responsible for proving that the third party's negligence limits his liability. (Docket No. 48, pp. 3–4.) Mr. Fort first asserted the existence of an unknown, negligent motorist as an affirmative defense to Mr. Neal's claims, and it is, therefore, Mr. Fort who is responsible for proving the existence of this unknown motorist. (*Id.*) Mr. Neal further argues that a genuine issue of material fact exists as to whether it was Mr. Fort or an unknown motorist who struck the back of his van, which precludes any grant of summary judgment to State Farm. (*Id.* at pp. 6–7.)

On August 24, 2016, State Farm filed a Reply, arguing that Mr. Neal amended his Complaint "to assert an uninsured motorist claim against State Farm, as his uninsured motorist carrier," and its Motion for Summary Judgment against Mr. Neal, therefore, is directed at the appropriate party. (Docket No. 52, p. 1.) State Farm then reiterates its argument that Mr. Neal has insufficient evidence to meet Tennessee statutory requirements for claims against unknown motorists, because no one has testified as to the existence of an unknown motorist who acted negligently on January 3, 2015 or to any physical contact between an unknown motorist's vehicle and Mr. Neal's van. (*Id.* at pp. 2–4.)

## **FACTS**[2]

In January of 2015, Mr. Neal was employed with a courier service that delivered prescription medications to assisted living facilities in Middle Tennessee. (Docket No. 46-2

---

[2] Unless otherwise noted, the facts recounted in this section are drawn primarily from (1) Mr. Fort's Statement of Material Facts (Docket No. 41) and the plaintiff's response thereto (Docket No. 49-1), and (2) State Farm's Statement of Undisputed Material Facts (Docket No. 45) and the plaintiff's response thereto (Docket No. 48-1). This section also contains facts from the defendants' Motions for Summary Judgment and memoranda of law in support thereof (Docket Nos. 39, 40, 43, 44), the plaintiff's Responses in opposition (Docket Nos. 48, 49), and the defendants' Replies (Docket Nos. 50, 52) that are not refuted or contradicted by the opposing party or the record. Where there is a genuine dispute of fact, the court will construe the fact in the light most favorable to the plaintiff as the non-moving party.

(Depo. W. Neal), 6:18–7:16.) As a courier, Mr. Neal picked up packages of medication at a warehouse in Nashville, Tennessee and delivered them to assisted living facilities in nearby Brentwood and Columbia, often using Interstate 65 to drive between delivery locations. (*Id.* at 7:1–12:11.) Mr. Neal ran this route twice per day, with a "late route" that typically had Mr. Neal departing the warehouse at 11 p.m. and returning to Nashville at 3 a.m. (*Id.* at 13:20–24, 22:2–16.) Mr. Neal drove this route five days per week for four years prior to the accident on January 3, 2015, and he had no traffic incidents during that time. (*Id.* at 12:15–13:6.) Mr. Neal was in good health in the weeks and years leading up to the accident in 2015, and he had no issues with his vision that could not be corrected by prescription lenses, which he always wore when he drove. (*Id.* at 16:10–18:1.)

In the evening hours of January 2, 2015 and the early morning hours of January 3, 2015, Mr. Neal was delivering medications along his "late route" in a white 1999 G.M.C. Safari van. According to Mr. Neal, he had no mechanical issues with the van before the accident and had placed new tires on the van six months before the accident. (*Id.* at 18:25–19:9.) Mr. Neal also testified that he was wearing his seatbelt and his glasses at the time of the accident. (*Id.* at 40:24–41:8, 62:15–19.) After delivering medications to all of the facilities on his route, Mr. Neal began his return to Nashville, driving northbound along Interstate 65. It is undisputed that, at approximately 3 a.m. in the morning of January 3, 2015, Mr. Neal was involved in a traffic accident resulting in serious injuries, but the record contains a number of differing accounts from the parties and other witnesses regarding how the accident occurred.

According to Mr. Neal's account, just before the accident, he was in the center lane of Interstate 65 and driving slightly under the speed limit in an attempt to improve his fuel efficiency. (*Id.* at 14:7–11.) Despite the area around the interstate being foggy, Mr. Neal recalls

7

the traffic being normal for that time of night and the road being dry. (*Id.* at 23:16–23, 50:24–25.) At approximately mile marker 75, Mr. Neal saw another vehicle's lights[3] and felt something hit his van from behind, causing him to "los[e] control of [his] vehicle." (*Id.* at 14:11–13; 57:10–15.) After losing control of his van, Mr. Neal cannot recall anything more about the accident until he regained consciousness in his vehicle on the side of the interstate, where it had collided with an earthen median. (*Id.* at 14:14–23, 58:16–61:23.) Mr. Neal was shown several photographs of his damaged vehicle during his deposition, including images showing large portions of the driver's side of the van that have been dented inward and what appear to be dark scrape marks on the left side of the van's rear bumper. (*Id.* at Exs. 2–6.) Mr. Neal does not recall his van being hit from the side at any point, nor does he recall any of the marks on the van having been there before the accident. (*Id.* at 63:17–66:16.)

Mr. Fort's account differs drastically from Mr. Neal's account. (Docket No. 38-2 (Fort Interrogatories).) According to Mr. Fort, he was driving his black Acura MDX northbound on Interstate 65 in the early morning hours of January 3, 2015. (*Id.* ¶ 7; Docket No. 20 ¶ 2.) Mr. Fort claims that he was traveling the speed limit – 70 miles per hour – and that the roadway was wet. (Docket No. 38-2 ¶¶ 10.) According to Mr. Fort, Mr. Neal's vehicle suddenly "cut[] across [his lane] in a perpendicular fashion," and he "immediately reacted by steering to the left." (*Id.*) Mr. Fort further claims that he had no time to brake before hitting Mr. Neal's van and that "the front of [his] vehicle struck the driver's side of [Mr. Neal's] van." (*Id.* ¶¶ 10–11.)

---

[3] In his Response, Mr. Neal asserts that he "saw headlights approaching from the rear until the vehicle of those headlights impacted the rear of [his] van." (Docket No. 49, p. 2.) As Mr. Fort notes in his Reply, however, this assertion is a slight mischaracterization of Mr. Neal's deposition testimony, in which he states merely that he did not see the vehicle that hit him, but did see "a vehicle's lights." (Docket No. 46-2, 57:10–13.)

8

Mr. Fort denies any negligence in his driving and asserts that, "if [Mr. Neal]'s vehicle was rear-ended on the interstate then the same was caused by the negligence of some unknown driver operating a John Doe vehicle." (*Id.* ¶ 20.)

State Farm has submitted accounts of the accident from two other motorists, Brian Russell Young and Kimberley Young, a married couple from Pennsylvania who were traveling northbound on Interstate 65 just before the accident. According to Mr. Young, who was driving, it was dark and "raining very hard" that morning. (Docket No. 46-3 (Dep. B. Young), 10:2–9.) Mr. Young claims that he "looked down to change the radio station," and when he looked back up to the road, a white van and a black car "hit side to side" in front of his vehicle. (*Id.*) Because he had been looking at the radio, however, Mr. Young admits that he saw only "the immediate point" of impact between the two vehicles, and he has "no idea" what happened before that. (*Id.*) Mrs. Young, on the other hand, was asleep at the time of the accident and did not wake up until her husband "hit the brakes really hard." (Docket No. 46-4 (Dep. K. Young), 9:8–15.) Mrs. Young, therefore, has no knowledge of anything that happened up to, and including, the collision between the white van and the black car. (*See id.* at 11:25–12:6.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

9

322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

In order to prevail on his claims of negligence and negligence *per se* under Tennessee law, Mr. Neal must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403 (6th Cir. 2004) (quoting *Bennet v. Putnam Cnty.*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000)). Neither of the defendants disputes that all motorists owe a duty to use reasonable care while operating their vehicles, nor do they appear to dispute that Mr. Neal was injured as a result of the accident. (*See* Docket No. 40, p. 4.) Despite these concessions, however, the defendants argue that Mr. Neal lacks evidence sufficient to support his negligence claims under Tennessee common and statutory law.

I.   **Mr. Fort's Motion for Summary Judgment**

Mr. Fort argues that Mr. Neal lacks sufficient evidence to demonstrate that Mr. Fort

(1) breached his duty of reasonable care by failing to drive carefully and in accordance with applicable laws or (2) acted in a manner that was a cause in fact of the accident and, thereby, Mr. Neal's injuries. (*Id.* at pp. 4–8.) Mr. Neal attempts to rebut Mr. Fort's argument regarding the sufficiency of the evidence by relying on the doctrine of *res ipsa loquitur*, which allows an inference of negligence, "where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." *Seavers*, 9 S.W.3d at 91. According to Mr. Neal, "[i]t is within the common knowledge of a potential juror that the type of injuries sustained by [him] would not ordinarily occur sans negligence." (Docket No. 49, p. 6.) It is not clear to the court, however, that the doctrine of *res ipsa loquitur* applies to Mr. Neal's claims. As Mr. Fort has correctly argued, *res ipsa loquitur* "does not generally apply where specific acts or negligence are alleged and where evidence in support of such allegations is presented." *Brown v. Univ. Nursing Home, Inc.*, 496 S.W.2d 503, 509 (Tenn. Ct. App. 1972). Mr. Neal has specifically alleged that Mr. Fort was negligent when he rear-ended Mr. Neal's van on the interstate, and he has presented evidence in support of that theory. It does not appear, therefore, that the doctrine of *res ipsa loquitur* is applicable here.

Mr. Neal, however, does not need to rely on the doctrine of *res ipsa loquitur* to survive summary judgment. After reviewing the record and construing all disputed facts in favor of Mr. Neal, the court concludes that he has presented evidence sufficient to support the reasonable inference that Mr. Fort negligently allowed his black Acura to hit Mr. Neal's van from behind, causing the accident and attendant injuries to Mr. Neal. Mr. Neal testified that he saw a vehicle's lights prior to his van being hit from behind, and photographs of the damage to his van reveal dark scrapes on his van's left rear bumper that Mr. Neal claims were not there prior to the accident. This evidence, along with Mr. Fort's admission that he hit Mr. Neal's van with the

"front of [his] vehicle" (Docket No. 48-2 ¶ 11), supports Mr. Neal's argument that he was rear-ended by Mr. Fort on the interstate. This contact between the two vehicles would constitute a breach of Mr. Fort's duty to use reasonable care while operating his vehicle, particularly in light of laws requiring motorists to "exercise due care . . . by keeping the vehicle under proper control" and prohibiting them from "follow[ing] another vehicle more closely than is reasonable and prudent." Tenn. Code Ann. §§ 55-8-124(a), 55-8-136(b).[4] Moreover, a reasonable fact-finder could conclude, based on Mr. Neal's testimony that his van had no mechanical issues prior to the accident and was equipped with new tires, that Mr. Neal would not have lost control of the van and hit the earthen median absent another vehicle hitting the van from behind. Mr. Neal's account of the cause of the accident and the consistent photographic evidence, therefore, support the reasonable inference that Mr. Fort breached his duty to Mr. Neal by allowing his vehicle to hit Mr. Neal's van from behind, causing Mr. Neal to lose control of his vehicle and crash into the earthen median.

Mr. Fort attempts to disprove Mr. Neal's account of the accident with citations to his own sworn responses regarding the accident and the sworn testimony of the Youngs. Mr. Fort argues that his own account of the accident "demonstrate[s] that his vehicle did not rear-end [Mr. Neal] at any point." (Docket No. 50, p. 2.) Moreover, Mr. Fort argues, the Youngs' testimony regarding the accident demonstrates that Mr. Neal's van and Mr. Fort's car made contact only "side by side (*i.e.*, [they] did not see a rear-end collision)," which is consistent with Mr. Fort's

---

[4] Mr. Fort appears to argue that Mr. Neal cannot prove that Mr. Fort acted negligently because he has no evidence regarding "how [Mr.] Fort was driving, his position on the interstate, or even the speed he was going." (Docket No. 40, p. 6.) Even without that information, however, a reasonable fact finder could conclude that any driver who allows his vehicle to come into contact with the rear bumper of another vehicle on the interstate acted negligently, and the court does not find the lack of specific details regarding Mr. Fort's driving on the night in question to be dispositive of Mr. Neal's claims.

account. (*Id.* (citing Docket No. 46-3, 10:2–17.) These additional accounts, however, serve only to demonstrate that there is a genuine dispute of fact as to how the accident occurred. The court cannot, on summary judgment, credit the testimony of one of the defendants over that of Mr. Neal, particularly when photographic evidence exists that is – on its face – consistent with Mr. Neal's account of the accident. The court also cannot credit the testimony of the Youngs over that of Mr. Neal, when both Mr. and Mrs. Young admit that they were not observing the road immediately prior to the collision Mr. Young observed and, therefore, have "no idea" whether there was any contact between the two vehicles prior to that collision. Ultimately, the determination of Mr. Neal's claims will depend upon the credibility of the different accounts that have been presented to the court, and those disputes about credibility must be resolved by a jury. *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) ("Courts may not resolve credibility disputes on summary judgment.").

Accordingly, the court finds that genuine disputes of fact support all material elements of Mr. Neal's claims against Mr. Fort, and it will deny Mr. Fort's Motion for Summary Judgment.

## II.  **State Farm's Motion for Summary Judgment**

As a preliminary matter, the court has serious reservations as to whether State Farm's Motion for Summary Judgment has been directed against the proper party. As Mr. Neal correctly observes, the allegations regarding an unknown motorist were raised not by him but, rather, by Mr. Fort as an affirmative defense. (Docket No. 48, pp. 1–2.) If the court were to grant State Farm's motion and dismiss both it and the unknown motorist from the action, it would have to dismiss them for all purposes, including Mr. Fort's defense. Mr. Fort has not responded to State Farm's motion, and the court is wary of dismissing this seemingly important

aspect of his defense without having first heard from him on the issue.[5]

The court, however, need not determine whether State Farm's motion is directed at the proper party. Even if it is, the record contains evidence sufficient to meet the requirements for recovery against an unknown motorist under Tenn. Code Ann. § 56-7-1201(e), which provides:

> (e) If the owner or operator of any motor vehicle that causes bodily injury or property damage to the insured is unknown, the insured shall have no right to recover under the uninsured motorist provision unless:
>
> (1)(A) Actual physical contact has occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured; or
>
> (B) The existence of the unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle.

State Farm argues that this provision requires the court to grant summary judgment because "there is neither proof [that] actual physical contact occurred between the rear of the plaintiff's vehicle and a John Doe motorist[,] nor clear and convincing proof of the existence of the John Doe motorist." (Docket No. 44, p. 5.) This argument, however, ignores Mr. Neal's deposition testimony and photographs of his van, which – as described above – reasonably support the inference that a dark vehicle came into "actual physical contact" with the left rear bumper of the van. Moreover, Mr. Fort denies that he rear-ended Mr. Neal, creating a genuine dispute of fact as to whether it was Mr. Fort or another, unknown motorist who hit Mr. Neal from behind, causing him to lose control of his vehicle. The court, therefore, could not grant summary judgment to State Farm, even if the motion were properly directed and fully briefed by the appropriate parties. Accordingly, the court will deny State Farm's motion.

---

[5] Strangely, Mr. Fort makes no mention of the issue in his Reply in support of his own motion (Docket No. 50), which was filed more than month after State Farm filed its Motion for Summary Judgment.

## CONCLUSION

For the reasons discussed herein, the motions for summary judgment filed by Mr. Fort and State Farm will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge